IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:22-CV-00122-KDB-DSC

| | |
|---|---|
| JIMMY R. SUMMERLIN JR., Appellant, v. NANCY MONEY TURNAGE, Appellee. | ORDER |

**THIS MATTER IS BEFORE THE COURT** on Chapter 7 bankruptcy trustee Jimmy R. Summerlin, Jr.'s appeal from a decision of the United States Bankruptcy Court for the Western District of North Carolina. (*See* Doc. Nos. 1,4). The Court has reviewed the Bankruptcy Court's Order, the parties' briefs and exhibits, and other relevant pleadings of record. For the reasons discussed below, the Court will affirm the Bankruptcy Court's decision.

I. BACKGROUND

In 2011, Nancy M. Turnage ("Debtor") and her husband, George Turnage, bought their residence located at 4206 West Old US 421 Highway in Hamptonville, North Carolina (the "Property" or "Home"). After Mr. Turnage's death, Ms. Turnage's only source of income became Social Security and assistance from her son. Because of this dire financial situation, Ms. Turnage filed a voluntary petition seeking relief under Chapter 7 of the United States Bankruptcy Code ("Code"). Jimmy R. Summerlin Jr. ("Trustee") was appointed the Chapter 7 Trustee.

As part of her Bankruptcy Petition, Ms. Turnage filed certain schedules and statements as required by the Code. In her Petition, Ms. Turnage listed her Home. She valued the Home at $124,510.00, which she contends is $44,510 more than the Home's purchase price. In Schedule C

1

of her Petition, Ms. Turnage exempted $55,000 of value in her home under N.C. Gen. Stat. § 1C-1601(a)(1).[1] Ms. Turnage also listed her secured creditors as follows: (1) First National Bank of Pennsylvania (FNB) in the approximate amount of $52,703.00; (2) The Internal Revenue Service (IRS) in the approximate amount of $113,143.001; and (3) The North Carolina Department of Revenue (NCDOR) in the approximate amount of $47,942.292. The total of these secured liens is approximately $231,788.29. Though the exact amount of the indebtedness secured by the liens is disputed, the liens of FNB, the IRS, and NCDOR are not disputed.

As part of his assessment of this matter, the Trustee reviewed Ms. Turnage's ownership and interest in her home. In so doing, the Trustee estimated that the home would sell for $175,000 to $180,000.[2] As a result of this valuation, the Trustee objected to Ms. Turnage's homestead exemption arguing that it was improper as to claims by the IRS and NCDOR because N.C. Gen. Stat. § 1C-1601(e) makes her homestead exemption inapplicable to the tax liens.

The Trustee also negotiated with the IRS and the NCDOR to sell the home free and clear of their liens with a "carve-out"[3] of 40% of the net proceeds payable on each claim to the bankruptcy estate. After these negotiations, the Trustee filed a 'Motion for Authority to Conduct Sale of Real Property Free and Clear of Liens and Interests and to Approve Carve Out." The

---

[1] The standard exemption under this statute is $35,000 per person, except that in the case of a widow/widower over the age of 65 owning property formerly titled as tenants by the entirety, the exemption is up to $60,000. The Trustee does not contest that Ms. Turnage is a widow over the age of 65 or that the property was formerly titled as tenants by the entirety. *See* Doc. No. 4.

[2] The Trustee came to this conclusion based on the "Zestimate" of Ms. Turnage's home and a later external appraisal conducted by realtor Scott Morgan with Allen Tate Real Estate. *See* Doc. No. 4.

[3] A "carve-out" is a term originally coined by the courts and parties to describe those instances where a secured creditor agrees that its cash collateral may be used to pay administrative expenses, even though its interest may not be adequately protected. The term's meaning has broadened over time and may also refer to a secured creditor's agreement "to release funds to unsecured creditors as an incentive to the Chapter 7 trustee to administer the [encumbered] assets. . . . [I]t is essential to note that the carve out is a product of [an] agreement between the secured party and the beneficiary of the carve out." *See In re Christensen*, 561 B.R. 195, 207-208

2

Motion — which is closely related to the Objection — proposes to sell Ms. Turnage's Home using sections § 363(b) and § 724(b) of the bankruptcy code. The Trustee contends that his "intent in filing the Motion was to sell the Property, pay the FNB mortgage debt, and then divide the net proceeds between the IRS and NCDOR in accordance with the priority of their respective liens, retaining the 40% carve-out for the benefit of the Estate and its creditors." *See* Doc. No. 4. Based on his estimates, the Trustee argues that the sale would generate approximately $68,000 ($30,000 of which would pay administrative expenses including the Trustee's commission) for benefit of the Estate. The remaining $38,000 would be distributed to creditors.

After both the Objection and Motion were fully briefed, the Honorable Bankruptcy Judge Laura T. Beyer denied both the Motion to Sell and the Objection to Exemptions. The Trustee has timely appealed, and the matter is ripe for this Court's consideration.

## II. LEGAL STANDARD

Under Rule 8013 of the Federal Rules of Bankruptcy Procedure, "the district court . . . may affirm, modify, or reverse a bankruptcy judge's judgment, order or decree or remand with instructions for further proceedings. *See also* 28 U.S.C. § 158(a)(1). A district court reviews the bankruptcy court's findings of fact for clear error, its legal conclusions de novo, and its exercise of discretion for abuse. *See McCullough v. Horne* (*In re McCullough*), 495 B.R. 692, 694 (W.D.N.C. 2013) (citations omitted). When a case requires a conclusion about the legal effect of a bankruptcy court's factual findings, it presents a mixed question of law and fact. *United States HHS v. Smitley*, 347 F.3d 109, 115 (4th Cir. 2003) (quotation omitted). District courts review mixed questions of law and fact in bankruptcy appeals under a hybrid approach: "the ultimate conclusion of law is reviewed *de novo,* but the supporting factual findings are reviewed for clear error." *CWCapital*

*Asset Mgmt. v. Burcam Cap.*, No. 5:13-CV-278-F, 2014 Dist. LEXIS 87900, at *7 (E.D.N.C. June 24, 2014) (citing *Smitley*, 347 F.3d at 116).

### III. DISCUSSION

The Trustee raises four issues on appeal[4] centered around the Debtor's homestead exemption and the effect that it has, if any, on the Trustee's proposed distribution scheme under § 724(b).[5] As a result, all four issues can be resolved by deciding whether the Bankruptcy Court properly determined the applicability to § 724(b) and scope of the Debtor's homestead exemption.

Section 724(b) of the Bankruptcy Code permits trustees to subordinate certain types of tax liens to pay particular priority claims. *See* 11 U.S.C. § 724(b). Under § 724(b)'s alternate distribution scheme, any liens senior to the tax lien to be subordinated are paid first. Then claimants holding certain types of priority claims substitute in for the tax lien to the extent of the tax lien. Third, the tax lien is paid if it exceeds the payments to priority creditors. Next, any liens that are

---

[4] "(1) Whether the Bankruptcy Court erred in denying the Trustee's Objection to Exemptions where the applicable state exemption law specifically excepts the applicable exemption to claims of the United States and the State of North Carolina; (2) Whether the Bankruptcy Court erred in holding that the proposed carve outs from secured claims held by the Internal Revenue Service and North Carolina Department of Revenue are subject to the Debtor's homestead exemption; (3)Whether the Bankruptcy Court erred in holding that the proposed carve outs from secured claims held by the Internal Revenue Service and North Carolina Department of Revenue runs afoul of the distribution provisions set forth in 11 U.S.C. § 724(b); and (4) Whether the Bankruptcy Court erred in denying the Trustee's Motion to Sale Property and Approve Carve Outs where the proposed carve outs provide a significant distribution to general unsecured creditors after payment of administrative expenses and where the proposed carve outs are provided from funds otherwise payable to the Internal Revenue Service and North Carolina Department of Revenue based on their secured claims." *See* Doc. No. 4.

[5] The Trustee seeks to sell the Property under this modified distribution scheme because, as noted by the Bankruptcy Court, it appears that using either party's estimate for the value of the home there is no equity in the Property over a mortgage and tax liens. This would typically prevent a sale of the Property. *See In re Marko*, Ch. 7 Case No. 11-31287, 2014 WL 948492, at *5 (Bankr. W.D.N.C. Mar. 11, 2014) ("The Bankruptcy Code generally contemplates that over encumbered property not be sold." (citing 11 U.S.C. § 363(f)(2))). However, § 724(b) allows for encumbered property to be sold.

4

junior to the tax lien are paid. To the point that the subordinated tax lien has not already been paid, it is satisfied after the junior liens. Lastly, any remaining proceeds go to the debtor's estate. Here, the only type of priority claim that appears to be available for substitution is the Trustee's own compensation, which would be mainly related to the sale of the home. *See* § 724(b)(2) (including the administrative expenses of a Chapter 7 trustee pursuant to § 507(a)(1)(C) and 507(a)(2)).

Conspicuously absent from § 724(b)'s distribution scheme is any mention of exemptions. *See In re Christensen*, 561 B.R. 195, 213 (Bankr. D. Utah 2016), aff'd sub nom. *Jubber v. Bird* (*In re Bird*), 577 B.R. 365 (B.A.P. 10th Cir. 2017) ("[T]he Court notes that there is an apparent tension between § 724 and the clear intent of § 522, which allows debtors to exempt property to assist in their fresh start."); COLLIER ¶ 724.03[3] ("If the tax lien in question is an IRS lien that encumbers the debtor's state law homestead, applying section 724(b) is not straightforward."). The lack of clarity on this issue has led courts to reach inconsistent results for varying rationales. *See In re Turnage*, 644 B.R. 656, 662-664 (Bankr. W.D.N.C. 2022) (collecting cases). Because North Carolina has opted out of the federal exemptions, state law controls this Court's analysis of the Debtor's homestead exemption. *See In re Gaddy*, Ch. 13 Case No. 14-40346, 2014 Bankr. LEXIS 4528, 2014 WL 5488441, at *1 (Bankr. W.D.N.C. Oct. 22, 2014) (citing *In re Crawford*, 511 B.R. 395, 399 (Bankr. W.D.N.C. 2014)).

North Carolina law construes exemptions liberally with an eye in favor of exemption. *See Taylor v. Caillaud*, No. 15-CV-00206, 2015 U.S. Dist. LEXIS 160984, 2015 WL 7738391, at *4 (W.D.N.C. Dec. 1, 2015) ("The North Carolina Supreme Court has cautioned that 'provisions which restrict a debtor's access to his exemptions should be construed narrowly.' Thus, debtors have long been 'allowed a great deal of flexibility in claiming and maintaining their exemptions' under the state's law.") (citations omitted); *see also Cook,* 2003 Bankr. LEXIS 2045, 2003 WL

5

21790296, at *2 ("The language of the North Carolina homestead exemption statute suggests that its purpose is to secure debtors and their families the shelter of a homestead.").

Keeping this liberal construction and the favoritism shown to the homestead exemption in mind, the Court finds that the carved-out funds are subject to the Debtor's homestead exemption. The Trustee's argument that because the carve-out funds would otherwise go to the tax liens the homestead exemption is inapplicable is unconvincing. If the Court adopted the Trustee's position, it would be letting the Trustee and the tax agencies bind the Court and dictate payments to other creditors. This would be improper. The Trustee and tax agencies cannot defeat the Debtor's homestead exemption by agreement absent any authority from the Code or North Carolina law. Put another way, once the tax agencies agree to the carve-out they cannot direct the allocation of the value created by such carve-out. *See In re Christensen*, 561 B.R. at 211. The Supreme Court's decision in *Law v. Siegel*, 571 U.S. 415, 134 S. Ct. 1188, 188 L. Ed. 2d 146 (2014) supports this conclusion.

In *Law*, the court held that an exemption can only be denied on a basis enumerated in the Bankruptcy Code or under state law. *Law*, 571 U.S. at 425-7. The Trustee has asserted no state law basis for disregarding the Debtor's homestead exemption. North Carolina law is silent as to the homestead exemption's applicability to *proceeds* created by a tax agency's voluntary carve-out, which is different than the lien itself. In sum, the Trustee asks the Court to deprive the Debtor of her homestead exemption on a basis that is not enumerated in the Code or North Carolina law. *See Christensen*, 561 B.R. at 214 ("[I]t is inconsistent with § 522(k) if exempted property is subject to distribution under § 724(b) and used to pay administrative expenses.").[6] This would be improper

---

[6] Moreover, as the Bankruptcy Court adeptly noted "Another problem with concluding that the silence of § 724(b) on the issue of exemptions means that the distributions are not subject to

6

under *Law*. Furthermore, in *Law* the Court refused to allow a debtor to be deprived of a homestead exemption to pay administrative expenses even when a trustee had to incur over $500,000 in attorney's fees due to the debtor's fraud. *Law*, 571 U.S. at 420. Here, the Trustee is attempting to, without any allegations of fraud, circumvent the Debtor's homestead exemption to pay his own administrative expenses.

The Trustee urges this Court to reject this analysis and to adopt the reasoning in *Reeves v. Callaway*, 546 F. App'x 235 (4th Cir. 2013) (unpublished). However, the *Reeves* decision addressed a related but materially different question. In *Reeves* a trustee objected to the debtors' homestead exemption and was attempting to sell an encumbered residence using a negotiated carve-out with the IRS. *Id*. The debtors argued that the trustee lacked the statutory authority to sell debtors' residence because it was no longer property of the bankruptcy estate due to their homestead exemption. The court rejected this argument and found that debtors' residence was still property of the estate because it was not subject to an unlimited or in-kind exemption. The trustee could therefore sell the residence. That said, the Fourth Circuit opinion does not mention § 724(b) at all and focuses on whether the debtors' exemption removed the property from the debtor's estate entirely. There was no discussion on the role an exemption plays in the distribution of property under § 724(b). Similarly, the district court opinion mentions § 724(b) only once in passing. *See Reeves v. Callaway*, 2012 U.S. Dist. LEXIS 189722, 2012 WL 10180780, at *1. Simply put, in

---

exemptions is that Congress explicitly says elsewhere in the Code that some, but not all, of the priority claims that are included in § 724(b) are not subject to a debtor's exemptions. For example, § 522(c)(1) (by reference to § 523(a)(5)) makes exempt property liable for payments of domestic support obligations, which can be paid pursuant to § 724(b)(2) (by reference to § 507(a)(1)(A) and (B)). If Congress wanted to make additional types of priority claims superior to exemptions when the distributions are pursuant to § 724(b), the statute should say so." *In re Turnage*, 644 B.R. 656, 665 n.16 (Bankr. W.D.N.C. 2022).

7

Case 5:22-cv-00122-KDB-DSC   Document 8   Filed 03/14/23   Page 7 of 9

*Reeves* § 724(b) was an ancillary issue to which the Fourth Circuit and district court devoted little attention.[7]

Even more to the point, the Trustee's Motion must be denied because it substantially benefits no one other than himself and the tax agencies. Bankruptcy aims to relieve an honest debtor from the weight of oppressive indebtedness and permit her to start afresh free of obligations and responsibilities resulting from financial misfortune. *See Williams v. United States Fid. & Guar. Co.*, 236 U.S. 549, 554-5, 35 S. Ct. 289 (1915). This has been emphasized by courts as "being of public as well as private interest, in that it gives to the honest but unfortunate debtor who surrenders for distribution the property which [she] owns at the time of bankruptcy, a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." *See Loc. Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S. Ct. 695, 699 (1934). While another purpose of bankruptcy is to "convert the assets of the bankrupt into cash for distribution among creditors," *see Williams,* 236 U.S. at 554, property may not be sold solely to benefit secured creditors or the Trustee. *See Joseph v. Cooper*, 539 B.R. 489, 497 (W.D.N.C. 2015).

Here, the Trustee claims he is attempting to sell the Debtor's home because it will "substantially" benefit general unsecured creditors and assist the Debtor with her fresh start. However, on closer review it becomes clear that the only substantial beneficiaries of his "backroom" deal with the tax agencies are the Trustee himself and those agencies. The terms of the deal are simple enough. The Trustee receives $30,000 for his expenses. The IRS and NCDOR

---

[7] The equities at play in *Reeves* were also very different. In *Reeves*, the IRS agreed to give a debtor credit for the proceeds carved out of its lien. *See Reeves v. Callaway*, 546 F. App'x at 241 ("Notably, the fact that the IRS agreed to allocate part of its tax lien as a carve-out for unsecured creditors has no adverse consequences for Debtors because the Trustee confirmed before the bankruptcy court that Debtors will receive full credit with respect to the IRS lien for any amount paid to unsecured creditors from the sale proceeds as part of the carve-out."). Here there is no such agreement and consequently the carve-outs do little to help with the Debtor's fresh start.

each get 60% of their secured tax liens. The remaining 40% carved out of the tax liens (approximately $38,000 after payment of the Trustee's expenses) would be used to pay priority unsecured claims in full and the remainder would be disbursed pro rata among the general unsecured creditors. By the Trustee's own math, about $33,000 or 87% of the carved-out funds would be paid to the IRS and NCDOR. *See* Doc. No. 7, p. 8. And for her "fresh start," the Debtor, a 72- year-old widow with no meaningful source of income, loses her home and gets no more than a check for about $2,000. The minimal benefit to the other general unsecured creditors does not obscure the reality of this agreement. As the *Christensen* court described a similar agreement, this agreement is a "sham." It is not intended to benefit the general unsecured creditors but it was concocted to allow the tax agencies to "tip" the Trustee for selling the Debtor's home. The Court will not sanction this bastardization of the bankruptcy process. As a result, the Court will affirm the Bankruptcy Court's decision that the Debtor's homestead exemption applies to § 724(b) and denial of the Motion to Sell.[8]

**IT IS THEREFORE ORDERED THAT** the Trustee' appeal, Doc. No. 1, is **DENIED**, and the August 26, 2022 order of the Bankruptcy Court hereby is **AFFIRMED.**

**SO ORDERED ADJUDGED AND DECREED.**

Signed: March 14, 2023

Kenneth D. Bell
United States District Judge

---

[8] Specifically as to the Objection to the homestead exemption, the Court affirms the denial of the Objection for the reasons stated in this Order and agrees with the Bankruptcy Court that there is a distinction between an exemption not applying to certain types of claims or creditors and disallowing the exemption altogether. It is clear that the Debtor's homestead exemption does not apply to the tax agencies but that does not negate the exemption as applied to the Estate generally and therefore to the proceeds of the carve-outs. *See Fontana*, 2015 Bankr. LEXIS 3771, at *3-4 (citing In re Ruppel, 368 B.R. 42, 44 (Bankr. D. Or. 2007).